UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LAWRENCE GUYDELL PIERRE JR #768374 | CIVIL ACTION NO. 25-cv-105 SEC P |
| VERSUS | JUDGE VAN HOOK |
| DARRYL VANNOY | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

Lawrence Guydell Pierre, Jr. ("Petitioner") was charged in the Caddo Parish state court with second degree murder and conspiracy to commit second degree murder. On the date set for his jury trial, Petitioner entered a guilty plea to second degree murder, the court imposed an agreed mandatory life sentence, and the State dismissed the conspiracy charge. Petitioner did not file a direct appeal, but he later filed a post-conviction application in state court and asserted several claims of ineffective assistance of counsel. The state courts denied all claims on the merits.

Petitioner then filed this federal habeas corpus petition and asserted one of the post-conviction ineffective assistance of counsel claims. He argues that he is entitled to habeas relief from his conviction because his attorney gave him erroneous advice that he would be eligible for parole in 20 years if he pled guilty to second degree murder; the mandatory sentence for the crime is life imprisonment without benefit of parole. For the reasons that follow, it is recommended that the petition be denied.

**State Court Proceedings**

**A. The Crime and Investigation**

Shreveport Police Officer Chateri Payne shared a home with her boyfriend, Tre'veon Anderson. On January 9, 2019, as Officer Payne was outside the home preparing to leave for a shift, Anderson used a Glock .40 caliber pistol to shoot her three times. One shot to the head was fatal.

An investigation led the police to believe that Anderson, Petitioner, and Glenn Frierson were involved in the murder. Petitioner was taken into custody as he drove away from his workplace at the Caddo Juvenile Court. Petitioner, post-Miranda, said that he knew the officers wanted to talk to him about the murder of Officer Payne. He said that he was present at the time of the murder and had taken the murder weapon from Anderson and thrown it from the I-220 Cross Lake bridge. After an officer said that DOT cameras would be able to confirm that claim, Petitioner admitted that he lied. He then said that he had hidden the gun at his cousin's apartment. Officers obtained a search warrant for the apartment, retrieved the Glock pistol from the hiding space identified by Petitioner, and the crime lab determined that it was the weapon used to murder Officer Payne.

Police officers conducted a second interview with Petitioner. Like the first interview, it was audio and video recorded. This time, Petitioner said that Anderson told him that he planned to kill Payne, and Petitioner replied to Anderson that he had a gun that was purchased by his girlfriend so was not in his name. Petitioner admitted to exchanging several text messages with Anderson about the events related to the shooting. He said that

Glenn Frierson drove him to Anderson and Payne's home on the evening of the murder. Petitioner gave Anderson the Glock pistol and then waited at the rear of the home. After Anderson shot Payne, Anderson gave the murder weapon to Petitioner, who had Frierson drive him from the scene. Investigative Reports at Tr. 79-82.

**B. Indictment and Guilty Plea**

Petitioner was indicted for second degree murder and conspiracy to commit second degree murder. He entered a plea of not guilty. A hearing was held, and the trial court ruled that Petitioner's statements to police were made freely and voluntarily and would be admissible at trial, which was set for April 4, 2022. Tr. 14. On the date set for jury trial, Petitioner appeared with his attorney, Edward Mouton. The prosecutor announced that an agreement had been reached by which the State would dismiss the conspiracy charge and Petitioner would enter a plea of guilty to second degree murder. Mr. Mouton confirmed that arrangement, and Petitioner was placed under oath for the guilty plea colloquy. Tr. 1156.

Petitioner stated that he was 24 and had some college education. He understood the nature of the charge against him, had discussed it with Mr. Mouton, and wished to plead guilty. Tr. 1156-57. Petitioner now claims that his attorney told him that he would be eligible for parole after 20 years, but the judge told Petitioner a number of times that the sentence would be without the benefit of parole.

The first time was in the following exchange:

The Court: Do you understand the penalty for second degree murder is life imprisonment at hard labor - -

The Defendant: Yes, sir.

The Court: - - **without benefit of parole**, probation or suspension of sentence?

The Defendant: Yes, sir.

Tr. 1157-58. The prosecutor then recited the factual basis, defense counsel stated that Petitioner admitted to being a principal to the killing, the prosecutor identified the other two participants, and Petitioner told the court that this was all true. Tr. 1158-59. The court then accepted the guilty plea, Petitioner apologized to the family of the victim and asked for forgiveness, and the court turned to sentencing.

The Court: All right. So the charge of second degree murder carries with it automatically a life imprisonment sentence hard labor **without benefit of parole**, probation or suspension of sentence. The court will impose the sentence of life imprisonment at hard labor **without benefit of parole**, probation or suspension of sentence, concurrently, credit for time served.

Tr. 1159. The judge then asked the attorneys if this was an agreed sentence, they confirmed that it was, and they each waived any delays required by state law with regard to sentencing. The court then repeated that it would "sentence you to life imprisonment at hard labor **without benefit of parole**, probation or suspension of sentence, concurrently, credit for time served." Tr. 1159-60.

After the fourth time the judge said the sentence would be without the benefit of parole, the prosecutor dismissed the conspiracy charge, there was some discussion about Petitioner remaining at the local jail so that he would be available to potentially testify at the trial of the other two defendants, and Petitioner's fingerprints were taken in open court.

There is no indication in the record that, at any time during the hearing, Petitioner said anything about the fact that the judge told him four times that his sentence would be without benefit of parole.

**C. Post-Conviction Proceedings**

Petitioner filed a post-conviction application in state court that raised several claims of ineffective assistance of counsel. Only one of the claims is presented in the federal petition, but another of them helps explain affidavits from Petitioner's parents that he attached to his federal petition. The affidavits address an alleged 20-year plea offer, which may sound somewhat relevant to the federal habeas claim. Both of those post-conviction claims will be discussed, primarily to demonstrate that (1) the parents' affidavits have no relevance to the habeas claim and (2) Petitioner presented only the barest of evidence to support the habeas claim.

The first claim, discussed as background, has its origin in Petitioner's post-sentence request for a copy of defense counsel's file. The file included a letter *from defense counsel* to a prosecutor in which defense counsel stated that Petitioner "is agreeable to pleading guilty to the charge of Obstruction of Justice in the above referenced matter which holds the max of 20 years." Counsel added that Petitioner would also testify truthfully for the State at the trial of the two co-defendants. Tr. 1229.

Petitioner spun this defense-offer letter into a post-conviction claim that counsel was ineffective for not communicating to him an alleged plea offer from the State that would have allowed him to plead guilty to the obstruction charge and receive only a 20-year sentence. Petitioner attached affidavits from his parents in which each stated that they

were upset and displeased when they "found out about the plea bargain that was available to my son by the District Attorney's office" because Mr. Mouton failed to communicate the 20-year offer to their son. Tr. 1230-31. In response, ADA Ron Stamps filed an affidavit in the state post-conviction record and testified that he was aware of the letter tendered by Mr. Mouton and the "offer was not tendered by or accepted by the Caddo Parish District Attorney's Office." Stamps added that the prosecution never offered to allow Petitioner to plead guilty to obstruction of justice. Tr. 1279-80.

Petitioner's post-conviction application also asserted the claim now presented in the federal petition. He argued that Mr. Mouton gave him erroneous advice that he would be eligible for parole after 20 years. The only supporting evidence filed in state court was an affidavit from Petitioner in which he stated that "trial counsel Edward Mouton was ineffective when he gave erroneous advise to Mr. Lawrence Pierre that if he plead guilty to Second Degree Murder I would be eligible for parole in twenty (20) years." Tr. 1223. That was the full extent of Petitioner's testimony on the issue. No context or other evidence was provided.

The trial court addressed the post-conviction application in a short opinion that recited the history of the case, noted that Petitioner asserted five claims of ineffective assistance of counsel, and summarily concluded that Petitioner "fails to meet his burden of proof under La. C. Cr. P. art. 930.2 and Strickland v. Washington," the Supreme Court decision that governs most ineffective assistance claims. Tr. 1390. Petitioner filed a writ application with the state appellate court, which stated that the writ was denied "[o]n the showing made." Tr. 1491-92. Petitioner then filed a writ application with the Louisiana

Supreme Court, which stated that it was denied because Petitioner "fails to show that he was denied the effective assistance of counsel during plea negotiations under the standard of Strickland[.]" Tr. 1605-06; State v. Pierre, 397 So.3d 1214 (La. 2024).

**Analysis**

To obtain federal habeas relief, Petitioner must show that the Louisiana courts' rejection of his ineffective assistance of counsel claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). That clearly established law for ineffective assistance claims is the two-part test set forth in Strickland v. Washington, 104 S.Ct. 2052 (1984). The petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 2064.

With respect to the performance prong, the court must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Strickland, 104 S.Ct. at 2065. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., 104 S.Ct. at 2064.

Even if counsel's performance is deemed deficient, the petitioner must also show prejudice. That requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S.Ct. 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To show such prejudice in a guilty plea case, "the defendant must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S.Ct. 366, 370 (1985).

Petitioner's claim was adjudicated and denied on the merits by the state court, so Section 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

Petitioner complains that the state court did not allow him an evidentiary hearing, but "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001). Thus, federal courts have rejected habeas claims that the state court should have held an evidentiary hearing on a post-conviction application. Mathis v. Dretke, 124 Fed. Appx. 865, 871-72 (5th Cir. 2005). There is no requirement that the state court hold a full and fair hearing before it denies a post-conviction application, and the federal court applies a presumption of correctness to state court findings even absent such a hearing. Id., citing Valdez v. Cockrell, 274 F.3d 941, 949 (5th Cir. 2001). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).

The state courts' denial of this claim was entirely reasonable. The record shows that the trial judge told Petitioner four times that his sentence would be without benefit of parole. There is no evidence in the state-court record that Petitioner ever questioned parole eligibility before he filed his post-conviction application. The only evidence he submitted to the state court was his own affidavit that included a bare one-sentence claim that counsel erroneously advised that he would be eligible for parole in 20 years. Petitioner states in his reply memorandum (Doc. 9) that he did not question the judge's statements that his sentence would be without benefit of parole because, "Mouton told Pierre to agree and offer nothing more because he was going to work it out." There is zero evidence in the state or federal record to support this assertion.

With respect to prejudice, Petitioner did not even testify in his affidavit that, had he been told by counsel that he was not eligible for parole, he would have insisted on going to trial. Petitioner has stated in his memorandum that he would have insisted on going to trial, but a "bare allegation" on this issue is insufficient to establish prejudice, especially where evidence of guilt against the petitioner was strong. King v. Davis, 898 F.3d 600, 604-05 (5th Cir. 2018). The evidence of guilt was certainly strong here, where Petitioner confessed to the crime in a recorded statement that had been ruled admissible.

Petitioner did not present the state court with any compelling evidence to support his claim of ineffective assistance of counsel. The claim was squarely at odds with the plea colloquy. Under these circumstances, the state court's denial of the claim does not permit habeas relief under the demanding standard of Section 2254(d).

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14)

days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of October, 2026.

Mark L. Hornsby
U.S. Magistrate Judge